UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELISSHIA L. MUNROE-WILSON,

    Plaintiff,

v.                                        Case No. 8:17-cv-3054-T-CPT

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security,

    Defendant.
_____/

## **ORDER**

The Plaintiff seeks judicial review of the Commissioner's denial of her claims for Supplemental Security Income (SSI), Disability Insurance Benefits (DIB), and Child's Disability Benefits (CDB).[1] For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

---

[1] A CDB claimant receives benefits under her parent's Social Security number and must prove, *inter alia*, that she is a dependent of that parent and has a disability that began before the age of twenty-two. *See* 20 C.F.R. § 404.350.

I.

The Plaintiff was born in 1988, has a ninth-grade education, and has past relevant work experience as a housekeeper and convenience store cashier. (R. 20, 45, 47, 56). On December 30, 2014, January 6, 2015, and February 6, 2015, the Plaintiff applied for SSI, DIB, and CDB, respectively, alleging disability as of February 12, 2010. (Doc. 21 at 1). The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. (R. 61-136).

At the Plaintiff's request (R. 172-73), an ALJ conducted a hearing regarding the Plaintiff's applications on February 8, 2017 (R. 40-60). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. (R. 40-55). A vocational expert (VE) also testified. (R. 55-58).

In a decision dated March 29, 2017, the ALJ found that the Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset date; (2) had the severe impairment of migraines "without aura"[2] (migraines or migraine headaches); (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform light work, subject to certain exertional and non-exertional limitations; and (5) was capable of performing her past relevant work as

---

[2] Migraines "without aura" lack the "visual, sensory, motor, or motor disturbance" symptoms that precede certain types of migraine headaches. *Seward v. Berryhill*, 2018 WL 6411396, at *4 (E.D. Wis. Dec. 6, 2018); *see also* https://www.webmd.com/migraines-headaches/what-is-a-migraine-without-aura#1 (last visited March 27, 2019).

well as other representative jobs in the national economy. (R. 15-21). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 21-22).

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a); 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[4] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

P, Appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform other work in the national economy given his or her RFC, age, education, and work experience. *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id*. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided that the Commissioner has issued a final decision on the matter after a hearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Although no deference is given to the Commissioner's legal conclusions, her findings of fact "are conclusive if they are supported by 'substantial evidence.'" *Doughty*, 245 F.3d at 1278 (quotation and citation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a

conclusion." *Hargress*, 883 F.3d at 1305 n.2 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

III.

The Plaintiff asserts three related arguments on appeal: (1) the ALJ's decision to discount the Plaintiff's subjective complaints regarding her migraine headaches is not supported by substantial evidence; (2) the ALJ's findings as to the nature and efficacy of the Plaintiff's treatment for her migraines is likewise insufficiently supported; and (3) the ALJ's RFC determination does not capture the functional limitations resulting from these headaches. (Doc. 21 at 24-46). In response, the Commissioner contends that there is adequate evidence to buttress the ALJ's findings on the issues raised by the Plaintiff. *Id.* at 28-48.

Upon a thorough review of the matter, the Court finds merit in the Plaintiff's first two arguments, such that reversal and remand is warranted.

A.

In this Circuit, an ALJ's consideration of a claimant's subjective complaints is governed by the "pain standard." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined

5

medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Where a claimant satisfies this "pain standard," the Regulations dictate that the ALJ then evaluate the intensity and persistence of the symptoms to determine how they limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c), 416.929(c). Relevant factors in this regard include the objective medical evidence, evidence of factors that precipitate or aggravate the symptoms, medications and treatments available to alleviate the symptoms, how the symptoms affect daily activities, and past work history. *Id*. A "claimant's subjective testimony supported by medical evidence that satisfies the [pain] standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (citations omitted).

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If the ALJ elects not to credit the claimant's subjective testimony, however, she must articulate explicit and adequate reasons for his decision. *Dyer*, 395 F.3d at 1210 (quotation and citation omitted). A reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence in the record. *Foote*, 67 F.3d at 1562 (citation omitted).

In this case, the ALJ found that the Plaintiff's migraine headaches were a severe impairment that "significantly" restricted her ability to perform basic work activities. (R. 16). In assessing the Plaintiff's RFC, however, the ALJ concluded that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her

migraine symptoms were not entirely consistent with the objective medical evidence, opinion evidence, and other evidence of record. (R. 18-20). As support for this conclusion, the ALJ relied upon certain treatment records, the Plaintiff's own statements regarding her pain and her ability to engage in activities of daily living, and the opinions (or lack thereof) rendered by the Plaintiff's treating physicians and the state agency doctors who reviewed the record in 2015. (R. 17-20). The Court will address each of these components of the record in turn. *See Kidd v. Berryhill*, 2017 WL 3712100, at * 6 (M.D. Ala. Aug. 28, 2017) (explaining that the court on review will focus on the evidence specifically cited by the ALJ in support of his position to determine whether substantial evidence supports his conclusion).

B.

Beginning with the Plaintiff's treatment records, the ALJ opined that these materials indicated the Plaintiff received "routine and/or conservative" care that "appear[ed] to have controlled her symptoms" and thus evidenced her ability to work. (R. 20). These conclusions lack sufficient support.

Contrary to the ALJ's assessment, the evidence upon which the ALJ relied reveals that the Plaintiff sought frequent treatment for her migraines from 2012 through at least 2016[5]—including a host of medications and injections—that generally did not abate her symptoms. (R. 18). That care often involved physicians adjusting her treatment based on her reports that it did not provide adequate relief. *Id*.

---

[5] As noted below, the Plaintiff presented evidence that she actually sought treatment for her migraines from 2012 through the date of the ALJ hearing in 2017.

As the ALJ also noted, in March 2014 the Plaintiff requested that her treating physicians refer her to a neurologist and prescribe her even stronger medication because she had been experiencing headaches for three days with a pain level of nine out of ten. (R. 18, 440). The subsequent treatment records upon which the ALJ relied show more of the same—namely, the Plaintiff complaining that her medications were not effective, followed by her physicians having to modify her treatment regime in an effort to afford her greater relief. (R. 18).

The ALJ's discussion of the treatment the Plaintiff received from two neurologists in 2014 and 2015 also does not cohere with her findings that the Plaintiff's treatment was routine or conservative or that she received considerable relief from her symptoms. (R. 18-19). As the ALJ recognized, Dr. Thomas DiGeronimo, the first neurologist who treated the Plaintiff, observed that she had tried many medications for both prevention and relief with little success. (R. 19, 454). In fact, the relevant treatment records evidence Dr. DiGeronimo's continuous adjustment of the Plaintiff's medications and injections while she was under his care. *See, e.g.,* (R. 456-75). Dr. Juan Joy, the second neurologist who saw the Plaintiff, similarly stated that the Plaintiff had tried essentially every medication and that he was unsure what else he could offer her. (R. 510). As a result, Dr. Joy recommended that the Plaintiff's primary care physician refer her to a specialized headache clinic. *Id.*

Although the ALJ summarized these treatment records, it is not clear from her decision what led her to characterize the Plaintiff's treatment as routine and/or conservative or to conclude that such treatment successfully controlled the Plaintiff's

8

symptoms. (R. 20). The records the ALJ discussed instead largely portray the Plaintiff's symptoms as uncontrolled despite regular treatment from primary care physicians and two specialists, as the Plaintiff herself described at the hearing.

The Plaintiff testified in this regard that she experienced "unbearable" painful migraines "basically every day," and that her pain was not alleviated by any of the medications she had been prescribed. (R. 50-51). The Plaintiff further advised that, as result of her inability to gain relief from her migraines, she had scheduled an upcoming appointment at a headache clinic where she expected to gain access to new technologies or medications. (R. 54); *see Wagner v. Colvin*, 2017 WL 3087489, at *5 (N.D. Ala. July 20, 2017) ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medication, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." (quoting Social Security Ruling (SSR) 16-3p)).

The Commissioner's citations to evidence indicating that the Plaintiff occasionally received treatment that afforded her some degree of relief (Doc. 21 at 32) similarly does not provide a sufficient basis upon which to sustain the ALJ's analysis of the Plaintiff's medical records. *See Wagner*, 2017 WL 3087489, at *6 ("The fact that some of the medications helped ease the severity . . . or that during some months the frequency or severity decreased . . . does not support the ALJ's broad rejection of the [p]laintiff's credibility concerning the intensity and persistence of her migraines.").

9

Nor does the fact that the Plaintiff reported a cessation of her migraines from the age of eighteen until the time she had her children in her mid-twenties. (R. 19). In fact, as noted, the Plaintiff presented evidence in this regard that she experienced and sought treatment for her migraines from 2012 through the date of the ALJ hearing in 2017. *See Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 871 (11th Cir. 2016) ("[A] claimant is under a disability if he is unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months" (citing 42 U.S.C. § 1382c(a)(3)(A))).

The Court also does not find it persuasive that an October 2013 magnetic resonance imaging (MRI) of the Plaintiff's brain "revealed no significant intracranial pathology." (R. 18). Although the ALJ cited this MRI in support of her decision, "the established law in this area" treats migraine headaches "as an impairment that is diagnosed by symptoms, not by any x-ray, MRI, blood test, or laboratory result." *Wagner*, 2017 WL 3087489, at *5 (citations omitted); *see also Thomas v. Colvin*, 2016 WL 11475232, at *5 (N.D. Fla. May 10, 2016) ("The existence or severity of migraines . . . cannot be confirmed by objective testing.") (citation omitted); *Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1215 n.7 (S.D. Ala. 2007) (collecting cases).

In sum, based on all of the above, the ALJ's findings as to the nature and effectiveness of the Plaintiff's treatment lack sufficient support in the record.

## C.

The ALJ's decision to discount the Plaintiff's migraine symptoms based on her statements at the hearing is likewise not adequately supported by the record. (R. 19). The ALJ concluded in this regard that the Plaintiff's hearing "testimony casts significant doubt upon the true extent of her limitations and her credibility." *Id.* In an effort to bolster this conclusion, the ALJ noted that the Plaintiff testified she was able to get her five-year-old daughter up, dressed, fed, and off to school. (R. 18).

A careful review of the record, however, reveals that this characterization of the Plaintiff's testimony does not reflect an accurate or fulsome representation of what she told the ALJ. Based on the Court's reading of the hearing transcript, the Plaintiff actually testified that, since her daughter was older, she would usually have her dress herself, brush her own teeth, and then take a look at her. (R. 52). The Plaintiff further testified that, on days she experienced severe headaches, she would merely say goodbye to her daughter and let her mother take her daughter to school. *Id.*

The Plaintiff's testimony regarding the limited involvement she had in preparing her daughter for school comports with her testimony about the difficulties she experienced during the remainder of the day due to her migraines. In particular, the Plaintiff testified that she was able to only occasionally wash clothes, that she was otherwise forced to remain inactive, that she did not take her daughter anywhere, and that her mother essentially took care of both her and her daughter. (R. 52-54).

Thus, contrary to the ALJ's assessment, the Plaintiff's testimony establishes, at most, that her capacity to care for her daughter and engage in other daily living

activities was dependent on her migraine headaches and rather limited. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability . . . ."); *Roberson v. Colvin*, 2014 WL 3810236, at *5 (N.D. Ala. July 30, 2014) (finding ALJ's rejection of plaintiff's testimony unreasonable due to unfounded assumption that an ability to engage in activities sporadically was inconsistent with disabling migraines and medical expert testimony that migraines do not affect the ability to engage in activities when an individual is not experiencing them).

The ALJ's decision likewise does not find support in the statements the Plaintiff made in her February 2015 Supplemental Pain Questionnaire and her March 2015 Functional Report. As with her hearing testimony, this evidence indicates that the Plaintiff suffered from severe and persistent headaches that were unpredictable and difficult to control. (R. 17). While the ALJ found that the Plaintiff's responses in these reports demonstrated her ability to tend to her personal care, drive a car, and shop in stores, *id.*, he failed to mention that the Plaintiff expressly qualified some of these statements by noting that she did not go out alone due to unexpected migraines and that the frequency of her outings depended upon whether she was experiencing any migraine pain (R. 339-41).

The Court is similarly unpersuaded by the ALJ's reference to the fact that the Plaintiff was able to handle her finances and get along with others. Such evidence has little, if any, relevance to the issue of whether her migraines were indeed disabling. (R.

17-18); *see Wagner*, 2017 WL 3087489, at *6 (advising that ALJ should focus on whether participation in certain activities is actually inconsistent with plaintiff's reported symptoms and if the frequency with which she engages in them belies her reports).

Nor does the Court find sufficient support for the ALJ's decision to discount the Plaintiff's credibility based on her testimony that she had not used marijuana in five years, and that there were notions in certain medical records that "meds not working (rule out) dru[g] seeking." (R. 19). Irrespective of whether there is evidence that contradicts the Plaintiff's representation of when she last used marijuana—an issue the parties dispute—the ALJ conceded in his decision that any suspicion by the Plaintiff's physicians that she was seeking drugs was, in fact, unconfirmed. *Id.*

D.

The Court also finds that the opinion evidence (or lack thereof) upon which the ALJ relied does not adequately sustain her decision to discount the Plaintiff's subjective reports of pain. In this regard, it appears that the ALJ afforded "substantial weight" to the opinions of the Plaintiff's treating physician, Dr. Jeetendra Issar.[6] (R. 19). This doctor, however, did not opine that the Plaintiff had no functional limitations as a result of her migraine headaches. Rather, he offered *no* opinion on the matter whatsoever. Dr. Issar's silence on this question is devoid of any significance in

---

[6] While the ALJ also noted that the state agency reviewing psychologists found insufficient evidence of a mental impairment, the ALJ accorded that determination "little weight" because, as the ALJ acknowledged, these consultants did not have the benefit of reviewing all of the evidence of record. (R. 19-20).

13

light of the issues set forth above concerning the ALJ's consideration of the other evidence material to her disability determination. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) (cautioning against drawing negative inference from treating source's silence as to a particular limitation).

E.

Based on the foregoing, the Court concludes that the record does not adequately support the ALJ's evaluation of the Plaintiff's subjective complaints or the ALJ's finding that the Plaintiff engaged in only routine or conservative treatment, which controlled her migraine symptoms. These deficiencies in the ALJ's decision are compounded by the fact that, although the ALJ deemed the Plaintiff's migraines to be a severe impairment, she made no estimation of their frequency, intensity, or duration. Courts within this Circuit have found that ALJs should conduct this inquiry whenever they deem a plaintiff's migraines to be a severe impairment as that term is defined in the Regulations. *See, e.g., Reis ex rel. Reis v. Astrue*, 2012 WL 3231092, at *4 (M.D. Fla. Aug. 6, 2012); *Wagner*, 2017 WL 3087489, at *7; *Kidd v. Berryhill*, 2017 WL 3712100, at *10 n.10 (M.D. Ala. Aug. 28, 2017). Absent such an assessment here, the Court is unable to determine whether the ALJ's RFC finding included appropriate limitations stemming from the Plaintiff's severe migraines and whether she was able to carry out the requirements of the work identified by the VE. *Reis*, 2012 WL 3231092, at *4.

Accordingly, the Court finds that reversal and remand is warranted. *See, e.g., Anderson v. Berryhill*, 2018 WL 1399267, at *9-10 (N.D. Ala. Mar. 20, 2018) (finding reversal in order where ALJ, in crafting plaintiff's RFC, offered reasons for discounting

claimant's subjective statements regarding intensity and limiting effects of her migraines that were not supported by substantial evidence); *Thomas*, 2016 WL 11475232, at *6-7 (remanding case for further consideration of plaintiff's migraines where ALJ found them to be a severe impairment but failed to properly evaluate the evidence and make clear what RFC restrictions accounted for the severity and intensity of her alleged headaches); *Lindsey v. Colvin*, 208 F. Supp. 3d 1239, 1245-50 (N.D. Ala. 2016) (reversing and remanding where ALJ mischaracterized plaintiff's statements as to her migraine symptoms, improperly relied on the lack of objective evidence, and drew unsupported conclusions from her ability to engage in limited daily activities). On remand, the Commissioner should properly evaluate the Plaintiff's alleged migraine-related limitations and set forth explicit justifications for her findings that are legally correct and supported by substantial evidence.

In light of the above findings, the Court need not address the Plaintiff's remaining claim of error. *See Demench v. Sec'y of Dep't of Health and Human Services,* 913 F.2d 882, 884 (11th Cir. 1990) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that it is unnecessary to review other issues raised on appeal where remand is required and such issues will likely be reconsidered in the subsequent proceedings).

IV.

For the foregoing reasons, it is hereby ORDERED:

1) The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Order.

2) The Clerk is directed to enter Judgment in favor of the Plaintiff and to close the case.

3) The Court reserves jurisdiction on the matter of attorney's fees and costs pending further motion.

DONE and ORDERED in Tampa, Florida, this 28th day of March 2019.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record